UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | No. 04 CR 156 |
| | ) | Judge John W. Darrah |
| GUSTAVO CAMPOS | ) | |

### MEMORANDUM OPINION AND ORDER

On September 28, 2004, a federal grand jury returned a superceding indictment that charged Defendant Gustavo Campos with various drug offenses in connection with his actions with the Campos drug-trafficking organization. Count One of the indictment charged the Defendant with conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine and more than 100 kilograms of marijuana, in violation of 21 U.S.C. § 846. Counts Two, Three, Four, Five, and Six charged the Defendant with various substantive drug-trafficking offenses, in violation of 21 U.S.C. § 841(a)(1) and § 846. The substantive drug-trafficking counts – Counts Two, Three, Four, Five, and Six – are independent of the conspiracy charged in Count One. Counts Seven, Eight, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen each charged the Defendant with using a telephone to facilitate the conspiracy charged in Count One of the indictment, in violation of 21 U.S.C. § 843(b).

The Defendant proceeded to trial on October 12, 2005. At trial, the Defendant did not deny that he was involved in drug-trafficking activity. On November 2, 2005, the Defendant was found guilty on all counts. Currently before the Court are the Defendant's Post-Trial

1

Motions, which seek judgment notwithstanding the verdict, arrest of the judgment and, alternatively, a new trial pursuant to Federal Rules of Criminal Procedure 29, 34, and 33, respectively.

## **LEGAL STANDARD**

Motions for judgment of acquittal should only be granted when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A defendant "faces a nearly insurmountable hurdle [because courts] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999) *(Blassingame)* ( *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997).

Federal Rule of Criminal Procedure 34 allows a trial court to grant an arrest of judgment when the specific offense of which a defendant is convicted "fails to state an offense" or where the court is "without jurisdiction of the offense charged." Fed.R.Crim.P. 34.

Federal Rule of Criminal Procedure 33 allows a trial court to grant a new trial on the motion of the defendant "if required in the interests of justice." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A motion for a new trial is not favored and should only be granted with great caution. In order to obtain a new trial, a defendant must demonstrate that his substantial rights have been jeopardized. *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993) *(Reeed)*.

## ANALYSIS

### *Motion of Judgment of Acquittal*

Pursuant to Federal Rule of Criminal Procedure 29, the Defendant moves to set aside the jury verdict and to enter a judgment of acquittal. In support of his motion, the Defendant asserts that no rational jury could have found that the proof established, beyond a reasonable doubt, that the charged conspiracy existed. Specifically, the Defendant asserts that there was not a single overarching conspiracy, as charged in Count One of the indictment, but, rather, proof of three distinct and separate conspiracies, involving different individuals, a different structure, and a different procedure, which thereby constitutes an impermissible variance between the Government's proof at trial and the single conspiracy charged in Count One. According to the Defendant, where co-conspirators work toward similar (but not identical) criminal ends, no reasonable jury could find the Defendant guilty of the conspiracy charged. The Defendant claims that "Campos was at the hub . . . but of three different wheels." (Def.'s Post Trial Motions, at p. 5).

The conspiratorial "wheels," according to the Defendant, are as follows: "The first conspiracy involved the use of Jerry Maj, and his trucking company for the transportation of the drugs. The second conspiracy primarily relied upon the use of rental passenger vehicles. And, the third conspiracy relied upon Joseph Bleka, and his trucking company." (Def.'s Post-Trial Motions, at p. 5). The Defendant claimed that, "Charged and uncharged individuals participated in completely distinct and finite criminal activities, with different ends." (Def.'s Post-Trial Motions, at p. 5). Thus, according to the Defendant, because each conspiracy was finite and separate from each other, the charged conspiracy did not exist.

3

The Government asserts that a reasonable jury could have found that the Defendant engaged in a single conspiracy and that the Defendant ignored substantial evidence presented by the Government upon which a reasonable jury could have determined that a single on-going conspiracy existed with a single goal and purpose: to distribute large amounts of cocaine and marijuana. The Government acknowledges that the means to carry out the conspiracy changed, in part, from time to time, but that the single conspiracy remained as charged in Count One and was supported by the evidence.

The evidence was as follows: During 2001, truck drivers hauled loads of marijuana from Texas to Chicago, using Jerry Maj's trucks. The persons involved included, *inter alia*, Defendant Gustavo Campos, Co-Defendant Martin Vasquez, Co-Defendant Felix Herrera, Jacek Zelek, and unidentified Mexican drug cartel participants. After Zelek's arrest, Jerry Maj would no longer allow his trucks to be used for hauling drugs. As a result, Defendant Gustavo Campos attempted to recruit other drivers, including Roger Perez and Willie Chester. Perez and Chester began cooperating with the Drug Enforcement Administration ("DEA"), and the DEA seized approximately 250 kilograms of cocaine in March 2002. As a result, Martin Vasquez began driving rental cars with concealed compartments between Texas and Illinois. This ceased in June 2003, when the DEA seized approximately $132,000 in drug proceeds from a trap compartment in a rental car that Martin Vasquez was scheduled to drive. After that, the means of transporting the drugs changed again. This time, trucks owned by other individuals were used to haul cocaine to Chicago, where the trucks were unloaded in Joseph Bleka's warehouse space. When the DEA seized 325 kilograms of cocaine at Joseph Bleka's warehouse in February 2004,

4

Gustavo Campos, Felix Herrera, and (until a few days before) Martin Vasquez were all actively participating in the conspiracy.

The conspiracy remained active and extant even though the means of carrying out the conspiracy changed. The Government witnesses' testimony supported an essential agreement between the conspirators to achieve the goals of the conspiracy, which did not change; the only thing that changed was the physical means by which delivery of the drugs was accomplished. Martin Vasquez and other witnesses testified that although some of the participants changed, the same core persons – including Defendant Gustavo Campos – continued to illegally traffic in cocaine and marijuana for profit. Defendant confuses the means by which the conspiracy carried out its activities with the objectives of the conspiracy.

Here, the record, viewed in the light most favorable to the Government, contains evidence from which the jury could find the Defendant guilty of a conspiracy as charged beyond a reasonable doubt. *Blassingame*, 197 F.3d at 284. The trial testimony and evidence – particularly, the testimony of Martin Vasquez and Jacek Zelek – show that the organization began drug-trafficking activities in at least December 2001 which continued until February 2004. The fact that some co-conspirators joined and left the conspiracy at different times does not affect this determination. *United States v. Curry*, 977 F.2d 1042, 1053 (7th Cir. 1992) ("Parties may join or withdraw from a conspiracy at any time without altering the fundamental nature of the conspiracy.").

Further, assuming *arguendo* that the evidence established the existence of three separate conspiracies, a sensible jury could still have convicted the Defendant because each of those three conspiracies was a subset of the single charged conspiracy. A defendant can be convicted of the

5

single charged conspiracy if any of his claimed conspiratorial conduct was a subset of the charged conspiracy. *United States v. Wilson*, 134 F.3d 855 (7th Cir. 1998). The Defendant, by his own admission, was "at the hub" of all three alleged conspiracies. Thus, assuming that there were three conspiracies rather than one (which is not the case), then a reasonable jury could still have found the Defendant guilty of Count One of the indictment.

## *Motion for an Arrest of Judgment*

The Defendant asks the Court to grant an arrest of the judgment pursuant to Federal Rule of Criminal Procedure 34. The Defendant asserts that the indictment upon which the Defendant was tried and convicted does not state facts sufficient to constitute the commission of a crime or public offense. The Defendant also asserts that the indictment is vague and that it is not sufficient in form or substance to enable the Defendant to plead the judgment and bar another prosecution of the same offense. Further, the Defendant asserts that the Court lacks jurisdiction over this offense because he argues that the regulation of narcotic offenses is an invalid exercise of Congress's Commerce power.

The Defendant's Rule 34 motion is denied. The superceding indictment alleges all elements of the charged offense and informs the Defendant of the offenses the grand jury charged the Defendant with committing. Further, the Defendant's Commerce Clause argument has been specifically rejected by the Seventh Circuit. *United States v. Westbrook*, 125 F.3d 966, 1009 (7th Cir. 1997).

## Motion for a New Trial

Next, the Defendant asserts that pre-trial and trial errors deprived the Defendant of a fair trial and, thus, that the Defendant's motion for a new trial should be granted pursuant to Federal Rule of Criminal Procedure 33.

The Defendant's first basis for his motion for a new trial is rooted in his contention that there were multiple conspiracies and that the Court erred in allowing the introduction of the co-conspirator's testimony under Federal Rule of Evidence 801(d)(2)(E). As discussed above, the Government's trial evidence, when viewed in the light most favorable to the Government, shows that a single conspiracy existed, albeit one that used different means at different times. Further, even if a single conspiracy did not exist, Federal Rule of Evidence 801(d)(2)(E) only requires that the statements were made in the furtherance of *a conspiracy*; a conspiracy was established by a preponderance of the evidence. Allowing the admission of the co-conspirator's statements was not error.

The Defendant next argues that the Court wrongly refused to suppress the Title III evidence. On January 26, 2004, the Government replaced two original compact discs – one with recordings from Target Phone 1 and one with recordings from Target Phone 3 – with duplicates that were not sealed. Before trial, the Defendant sought to suppress the Title III evidence. The issue was deemed moot because the Government asserted it would not introduce any of the recorded conversations in question, and these conversations were not introduced at trial. The Defendant now claims that a hearing should have been held and "could have possibly forced the Court to suppress other evidence as the fruits of the poisonous tree." (Def.'s Post-Trial Motions,

at p. 10) The Defendant does not specify what evidence might have been improperly admitted. A new trial will not be granted on this basis.

The Defendant next asserts that the Court erred in not granting a severance in this case. The Defendant was tried with his Co-Defendant, Joseph Bleka. On the eve of trial, the Defendant learned that Co-Defendant Bleka was going to raise the coercion defense by arguing that Martin Vasquez, a co-conspirator and Co-Defendant, coerced Bleka's involvement, perhaps at the behest of the Defendant. Defendant Gustavo Campos sought severance, arguing that a joint trial with Co-Defendant Bleka could create an unjustifiable inference of the Defendant's tendency for violence. The Court properly considered the Defendant's motion to sever and denied it on October 3, 2005, for the reasons stated in the transcript of proceedings.

The Defendant's last two bases – that the Court erred in giving certain jury instructions and the Court erred in not dismissing the indictment based on violations of the Defendant's Sixth Amendment rights – are general claims and do not specify grounds regarding the jury instructions or Sixth Amendment rights. Based on these vague allegations, a new trial is not warranted because the Defendant has not demonstrated that his substantial rights have been jeopardized. *Reed*, 986 F.2d at 192.

## CONCLUSION

For the foregoing reasons, Defendant Gustavo Campos' Post-Trial Motions are denied.

Date: June 27, 2006

JOHN W. DARRAH
United States District Court Judge